1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                        * * *

9   CHARLES STRICKER JR., an individual,     )
                                             )
10                 Plaintiff,                 )        03:06-CV-00613-LRH-VPC
                                             )
11   v.                                       )
                                             )        ORDER
12   NEVADA SYSTEM OF HIGHER                  )
    EDUCATION, a political subdivision of the )
13   State of Nevada, BERGER NELSON, GREG     )
    BATTAGLIA, JOHN BURNETT, MARY            )
14   DUGAN, JANNET VREELAND, MILTON          )
    GLICK, RICK FAVRE, ADAM GARCIA,          )
15   TODD RENWICK, JOHN FREDERICK and        )
    GEORGE LEONE,                            )
16                                            )
                   Defendants.                )
17                                            )
                                             )
18   _____)

19          Presently before the court is a Motion for Judgment on the Pleadings, to Dismiss, and to

20   Strike (# 15[1]) filed by defendants Nevada System of Higher Education ("NSHE"), Berger Nelson,

21   Greg Battaglia, John Burnett, Mary Dugan, Jannet Vreeland, Milton Glick, Rick Favre, Adam

22   Garcia, Todd Renwick, John Frederick, and George Leone (collectively, "Defendants").  Plaintiff,

23   Charles Stricker Jr. ("Stricker") has filed an opposition (# 23), and Defendants replied (# 27).

24   ///

25   _____

26          [1]Refers to the court's docket number.

**I.  Factual Background**

In this action Stricker alleges that he was retaliated against for exercising his First Amendment right to free speech.  At all relevant times to this action, Stricker was an employee at the University of Nevada, Reno ("UNR").  According to the complaint, Stricker entered into a settlement agreement with UNR in December, 2005, in an unrelated action.  Following the settlement agreement, Plaintiff allegedly "spoke out about this result and the basis for it in the press."  (Compl. (# 1) at 2.)  Plaintiff further alleges that he "spoke out" about campus cameras and security policies and reported discrimination and retaliation.  Finally, Plaintiff alleges that his speech activities involved participating in an Attorney General investigation about an allegation that defendants Adam Garcia and Todd Renwick falsified evidence about a swastika on a professor's door.

As a result of this alleged speech, Stricker argues that he suffered a long list of adverse actions including, but not limited to, a hate letter, having police reports unaddressed, denial of assistance, transfer of responsibilities, and altering his evaluation.  Thus, Plaintiff filed this action asserting causes of action for First Amendment retaliation, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.

**II.  Motion for Judgment on the Pleadings**

**A.  Legal Standard.**

Rule 12(c) of the Federal Rules of Civil Procedure provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law."  *General Conference Corp. of Seventh Day Adventists v. Seventh Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citing Fed. R. Civ. P. 12(c)).  "The Motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in

2

the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d. Ed. 2004). "In ruling on a motion for judgment on the pleadings, district courts must accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of the non-moving party." *Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., Inc.,* 907 F.Supp. 1361, 1381 (N.D. Cal. 1995). Judgment on the pleadings is improper if the district court must go beyond the pleadings to resolve an issue. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Under such circumstances, summary judgment is the proper procedure. *Id.*

**B. Discussion**

Defendants are seeking dismissal of all Stricker's causes of action. Defendants argue that Stricker's claim for a violation of his First Amendment rights fails because Stricker's speech was made pursuant to his official job duties. Defendant NSHE argues Stricker's claim for breach of the settlement agreement should be dismissed because NSHE did not breach any express terms of that agreement. Defendants next argue that punitive damages cannot be awarded against NSHE because Nevada law doesn't recognize a tort based upon the breach of a settlement agreement. With respect to Stricker's claim for intentional infliction of emotional distress, defendants argue that Stricker has failed to show that Defendants engaged in extreme and outrageous conduct, that they acted with the intent to cause emotional distress, or that the plaintiff has actually suffered extreme or severe emotional distress. Stricker opposes the motion arguing that Plaintiff's job duties do not involve the speech at issue in this case and that such an argument would be more appropriate on a motion for summary judgment. Stricker further argues that he has asserted a valid claim for breach of the implied covenant of good faith and fair dealing with respect to the settlement agreement. Finally, Stricker argues that he has properly pled a cause of action of intentional infliction of emotional distress. The court will address each cause of action below.

///

1            **1. First Amendment Retaliation**

2            To succeed on a First Amendment retaliation claim, Stricker has the "initial burden to

3 demonstrate that (1) he was subjected to an adverse employment action, such as being denied a

4 benefit or privilege . . . , (2) he engaged in speech that was constitutionally protected because it

5 touched on a matter of public concern and (3) the protected expression was a substantial motivating

6 factor for the adverse action." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 976 (9th

7 Cir. 2002) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)).  At issue for

8 purposes of the present motion is whether Stricker engaged in constitutionally protected speech.

9 Specifically, the parties dispute whether Stricker spoke as a concerned citizen or pursuant to his

10 official duties.  In *Garcetti v. Ceballos*, the Supreme Court held, "when public employees make

11 statements pursuant to their official duties, the employees are not speaking as citizens for First

12 Amendment purposes, and the Constitution does not insulate their communications from employer

13 discipline."  126 S.Ct. 1951, 1960 (2006).

14            Stricker's complaint alleges five instances of engaging in protected speech: 1) Stricker

15 allegedly spoke out about the result of an unrelated action; 2) Stricker allegedly spoke out about

16 campus cameras and security policy; 3) Stricker allegedly reported discrimination and retaliation;

17 4) Stricker alleges that the previous lawsuit and settlement were protected; and 5) Stricker

18 participated in an Attorney General investigation concerning possible falsified evidence.  The

19 present motion alleges facts that are outside of the pleadings and inappropriate for consideration in

20 a motion for judgment on the pleadings.  Although it appears unlikely that some of these

21 allegations are protected under the First Amendment, there is no evidence indicating whether any of

22 the above activities were engaged in pursuant to Stricker's official job duties.  In fact, evidence

23 concerning the scope of Stricker's job duties is not before the court.  Furthermore, at this time,

24 there is no evidence explaining exactly what conduct was allegedly protected by the First

25 Amendment and the circumstances surround such conduct.  Such questions are more appropriately

26

1   raised in a motion for summary judgment.

2   **2.  The Implied Covenant of Good Faith and Fair Dealing**

3   Stricker's second cause of action alleges breach of the implied covenant of good faith and

4   fair dealing with respect to the settlement agreement.  Defendants argue that Stricker did not have a

5   special relationship with his employer that would support such a claim.

6   "An implied covenant of good faith and fair dealing is recognized in every contract under

7   Nevada law."  *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251,

8   1256 (Nev. 1998).  "Where the terms of a contract are literally complied with but one party to the

9   contract deliberately countervenes the intention and spirit of the contract, that party can incur

10  liability for breach of the implied covenant of good faith and fair dealing."  *Hilton Hotels Corp. v.*

11  *Butch Lewis Prod., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).  This tort action is only available when

12  there is a special element of reliance or fiduciary duty.  *Id.* at 923.  Such a remedy has been found

13  in a narrow set of cases such as insurance and certain highly restricted wrongful discharge cases.

14  *Id.* at 923 n.4.

15  In the case at bar, Stricker has alleged no facts indicating that this case involves a special

16  element of reliance or fiduciary duty.  The complaint alleges such a relationship based on "the years

17  of service [Stricker] has given UNR, the jury's note, the settlement agreement, reliance on the

18  covenant of good faith, and the disparity of power."  (Compl. (# 1) at 6.)  None of these allegations

19  demonstrate that this is a "rare and exceptional" case indicating that there is a special element of

20  reliance between the victim and tortfeasor.  *See Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134

21  P.3d 698 (Nev. 2006).  "A special relationship is 'characterized by elements of public interest,

22  adhesion, and fiduciary responsibility.'"  *Id.* (quoting *Great American Ins. v. General Builders*, 934

23  P.2d 257, 263 (Nev. 1997)).  "Examples of special relationships include those between insurers and

24  insureds, partners of partnerships, and franchisees and franchisers."  *Id.* (citations omitted).  The

25  complaint in this case does not indicate such a special relationship.  As such, Stricker's Second

26

5

1    Claim for Relief will be dismissed.[2]

2              **3.  Intentional Infliction of Emotional Distress**

3         Stricker's third claim for relief asserts a claim for intentional infliction of emotional

4    distress.  Defendants argue that Stricker has failed to show that Defendants engaged in extreme and

5    outrageous conduct, that the Defendants acted with the intent to cause emotional distress, or that

6    Plaintiff has actually suffered extreme or severe emotional distress.  Stricker, in opposition, argues

7    that punishing someone for engaging in free speech or accessing the courts is outrageous.  Stricker

8    further argues that he has sufficiently alleged emotional distress and intent.

9         To establish a claim for intentional infliction of emotional distress, Stricker must establish

10   the following: "(1) extreme and outrageous conduct with either the intention of, or reckless

11   disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme

12   emotional distress and (3) actual or proximate causation."  *Oliver v. Lowe*, 995 P.2d 1023, 1025

13   (Nev. 2000) (citations omitted).  "Liability is only found in extreme cases where the actions of the

14   defendants go beyond all possible bounds of decency, is atrocious and utterly intolerable."  *Alam v.*

15   *Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D. Nev. 1993).

16        In this case, the complaint contains no allegations of outrageous conduct that goes beyond

17   all possible bounds of decency or that is utterly intolerable in a civilized community.  *See Norman*

18   *v. General Motors Corp.,* 628 F.Supp. 702, 703 (D. Nev. 1986).  The adverse actions that allegedly

19   occurred appear on pages two through five of the complaint.  Examples of these allegations

20   include: 1) "January 3, 2006, a hate letter from an agent of Defendant NSHE placed on Plaintiff's

21   desk in an office with limited access; with Favre as the person with both access and motive; given

22   he was the Defendant against whom the jury returned a verdict;" 2) "Plaintiff's police report

23   ──────────────

24   [2]Because Stricker has failed to allege a viable cause of action, this court need not address whether
     NSHE waived its Eleventh Amendment immunity by entering into a settlement agreement.  The court further
25   notes that there are no allegations that NSHE waived its Eleventh Amendment immunity with respect to any
     claim not related to the settlement agreement.  Because the court is dismissing Stricker's second claim for relief,
26   the court also need not address the issue of whether punitive damages can be awarded against NSHE.

unaddressed by Renwick and Garcia;" 3) "Plaintiff's complaint that it was harassment and Battaglia's response, leaning back in his chair, "You bit the hand that fed you with your verdict;" 4) "Requiring Plaintiff to train the recruit in his duties, Nelson stating that Plaintiff would be retired in six months, and Nelson and Garcia asking who would replace Plaintiff if he got hit by a bus." Accepting all allegations as true for the purpose of this motion, the court finds these allegations, along with other similar allegations in the complaint, insufficient to allege extreme and outrageous conduct.  As such, Stricker's third claim for relief will be dismissed.

**III.  Motion to Strike**

    **A.  Legal Standard**

       Rule 12(f) of the Federal Rules of Civil Procedure allows a court to grant a motion to strike if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  "'Scandalous' matter is that which improperly casts a derogatory light on someone, most typically on a party to the action."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d. Ed. 2004). A 12(f) motion is a drastic remedy and is generally disfavored by federal courts.  *Germine Music v. Universal Songs of Polygram*, 275 F.Supp.2d 1288, 1300 (D. Nev. 2003).

    **B.  Discussion**

       Defendants argue that Plaintiff's complaint contains several immaterial, impertinent, or scandalous matters.  Specifically, Defendants challenge those portions of the complaint that refer to the prior action, the settlement agreement, the jury verdict, and a note left by the jury. Alternatively, Defendants argue that those portions of the complaint should be stricken according to the Federal Rules of Evidence.  Stricker responds by arguing that none of the challenged allegations reflect on the moral character of any individual.  Stricker's opposition can further be interpreted as arguing that it is premature to file a motion in limine.

       At this stage in the proceedings, the court cannot say the above described allegations are

1    "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f).  Furthermore, to the

2    extent Defendants seek to exclude evidence in the form of a motion in limine, this court will

3    reserve ruling on issues of admissibility at this time.  Evidentiary objections are more appropriate

4    during a motion for summary judgment and/or at trial.

5         IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings, to

6    Dismiss, and to Strike (# 15) is hereby GRANTED in part and DENIED in part as set forth in this

7    order.

8         IT IS SO ORDERED.

9         DATED this 24th day of August, 2007.

10

11

12

13                                    _____
                                      LARRY R. HICKS
14                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26